**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Catherine Johnson, ) | CV 10-02690-PHX-FJM |
| Plaintiff, ) | **ORDER** |
| vs. ) | |
| Wyeth LLC; Pfizer Inc., individually and ) as successor in interest to Pharmacia & ) Upjohn Co.; Wyeth Pharmaceuticals, ) | |
| Defendants. ) | |

The court has before it defendants' motion to exclude opinions of plaintiff's expert Michael Maloney (doc. 78), plaintiff's response (doc. 84), and defendants' reply (doc. 100). We also have before us defendants' motion to exclude opinions of plaintiff's expert Dr. Hollon (doc. 80), plaintiff's response (doc. 96), and defendants' reply (doc. 104).

**I**

Plaintiff took hormone replacement drugs between 1982 and 1998, which she alleges caused her to develop breast cancer. Plaintiff asserts claims relating to her ingestion of Premarin and Provera under theories of negligence, strict liability, and fraud.

Expert testimony is admissible under Rule 702, Fed. R. Evid. if it is "scientific, technical, or other specialized knowledge" that "will help the trier of fact to understand the evidence or to determine a fact in issue," and "the testimony is based on sufficient facts or data. . . the testimony is the product of reliable principles and methods; and [] the expert has

1 reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The court acts as a gatekeeper to ensure that expert testimony "is both relevant and reliable." Avila v. Willits Envtl. Remediation Trust, 633 F.3d 828, 836 (9th Cir. 2011). The gatekeeping function applies to all expert opinions, whether based on specialized, technical, or scientific knowledge. Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 148-49, 119 S. Ct. 1167, 1174-75 (1999). We "determine reliability in light of the particular facts and circumstances of the particular case." Id. at 158, 119 S. Ct. at 1179.

**II**

Dr. Michael Maloney has a Ph.D. in economics and is a professor of economics. One of the courses he teaches is financial economics. Plaintiff seeks to have Dr. Maloney testify on one issue: Wyeth's net worth. Plaintiff argues that this testimony will be helpful to the jury in assessing the amount of punitive damages. Defendants do not object to Dr. Maloney's qualifications. Instead, they argue that his net worth opinion is inadmissible because it is irrelevant to a determination of punitive damages. On the contrary, the Supreme Court, the Ninth Circuit, and the Arizona Supreme Court have all recognized that evidence of net worth may be considered by juries assessing possible punitive damages. See TXO Prod. Corp. v. Alliance Res. Corp., 509 U.S. 443, 462 n.28, 113 S. Ct. 2711, 2722 n.28 (1993) (under "well-settled law" evidence of net worth "typically considered in assessing punitive damages"); White v. Ford Motor Co., 500 F.3d 963, 976-77 (9th Cir. 2007) (Nevada law requiring jury to consider defendant's financial position when assessing punitive damages "is consistent with the Supreme Court's and this circuit's longstanding recognition of the admissibility of net worth evidence"); Acheson v. Shafter, 107 Ariz. 576, 578, 490 P.2d 832, 834 (1971) ("The law is well-established that where punitive damages are properly in issue, inquiry may be made into a defendant's wealth. . . and may be made known to the jury so that it may impose an appropriate 'punishment.'").

Defendants next argue that Dr. Maloney's calculation of net worth is unreliable because it is not based on generally accepted accounting principles, and unnecessary because they are willing to stipulate to Wyeth's net worth if it is calculated by subtracting Wyeth's

1  liabilites from its assets. Plaintiff responds that this argument goes more to the evidence's
2  weight than its admissibility. We agree. Dr. Maloney indicates in a supplemental affidavit
3  that in the field of financial economics, net worth is calculated by looking to the market value
4  of assets (this calculation is identical to market capitalization). Response to Mot. to Exclude
5  Maloney, ex. 4 at ¶ 12. He states that this methodology is described in standard financial
6  economics textbooks. Id. Defendants have not offered any evidence suggesting otherwise.
7  Although they may disagree with Dr. Maloney's calculation of net worth based on financial
8  economics principles, this is a challenge more appropriately addressed by cross-examination.
9  "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on
10 the burden of proof are the traditional and appropriate means of attacking shaky but
11 admissible evidence." Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579, 596, 113 S. Ct.
12 2786, 2798 (1993). Dr. Maloney will be permitted to testify concerning Wyeth's net worth
13 if the issue of punitive damages arises.

14 Dr. Maloney also opines, however, that punitive damages should be large compared
15 to net worth to appropriately punish, and that when assessing punitive damages the "true
16 value" of a company (determined, in his opinion, by using his calculation of net worth) is
17 what is important. He describes three methods he developed for calculating punitive
18 damages based on analogies to fines for SEC violations, antitrust violations, and speeding
19 fines. Plaintiff avers that Dr. Maloney will not testify about defendants' conduct or about the
20 propriety of awarding punitive damages. Dr. Maloney's testimony on any of the other topics
21 described above is inappropriate. The amount of punitive damages awarded "is a question
22 peculiarly within the province of the jury." Acheson, 107 Ariz. at 579, 490 P.2d at 835. Dr.
23 Maloney's opinions as to the appropriate assessment of punitive damages awards and
24 suggested methods for calculating punitive damages usurp the jury's role and are
25 inadmissible.

## III

27 Dr. Matthew Hollon is an internal medicine physician and a clinical associate
28 professor of medicine. He has conduced research and written articles on the marketing of

1  pharmaceutical drugs.  Dr. Hollon proposes to testify about the standard of care for the
2  marketing and promotion of prescription drugs and how defendants breached that standard.
3  In essence, Dr. Hollon will opine that Wyeth's aggressive marketing of hormone replacement
4  drugs resulted in the prescribing of these drugs to "women who did not need hormone
5  replacement," and that "many women who needed it perhaps only for short-term relief were
6  kept on it for years."  Mot. to Exclude Hollon, ex. 9 at 87.  He concludes that but for Wyeth's
7  marketing campaign, "physicians would not have been conditioned to prescribe this drug and
8  most of these women would not have sought out this drug and many women would have
9  avoided the harms attendant to hormone therapy."  Id.

10  Defendants do not question Dr. Hollon's qualifications.  Instead, they first argue that
11  Dr. Hollon's testimony is irrelevant because it does not fit the facts of this case.  Specifically,
12  they point out that there is no evidence that plaintiff's physician, Dr. Wilmoth, relied on any
13  marketing or promotional material when deciding to prescribe Premarin and Provera to
14  plaintiff.[1]  Additionally, plaintiff testified that Dr. Wilmoth did not give her any written
15  materials about these drugs, had never heard of them prior to receiving a prescription, and
16  never saw any advertisements for Premarin or Provera.  She states that advertising played no
17  role in her decision to continue taking these drugs.  Mot. to Exclude Hollon, ex. 11.
18  Nevertheless, plaintiff argues that Dr. Hollon's testimony is relevant because he explains
19  "that physicians are notoriously wrong in describing what does and does not influence their
20  prescribing practices," and that "the specific testimony of any single physicians [sic] alleging
21  that pharmaceutical promotional practices do not affect them is exactly the point."  Response
22  to Mot. to Exclude Hollon at 8-9 (emphasis in original).

23  But this is not a case where a prescribing doctor claims that he was not influenced by
24  Wyeth's efforts.  Here, plaintiff has not presented any evidence suggesting that Dr. Wilmoth
25  was ever exposed to Wyeth's marketing efforts.  Without a link between Wyeth's marketing
26  and plaintiff's prescribing doctor, Dr. Hollon's opinions about the subtle effects of marketing

---

[1] Dr. Wilmoth is deceased, so was not deposed.

- 4 -

on prescribing practices are irrelevant. A person cannot be affected by marketing, even subliminally, unless he was exposed. And Dr. Hollon's opinion that Wyeth's marketing influenced women to seek out hormone replacement drugs is irrelevant when plaintiff confirmed that she never saw any advertisements for Premarin or Provera, and had never even heard of these drugs prior to being prescribed them. Dr. Hollon's testimony, in other words, will not help the jury. See Daubert, 509 U.S. at 591-92, 113 S. Ct. at 2796 (helpfulness "requires a valid [] connection to the pertinent inquiry as a precondition to admissibility"). Neither are Dr. Hollon's opinions relevant to the issue of punitive damages. For the same reasons as discussed above, plaintiff has presented no nexus between Wyeth's advertising and the "specific harm" that she suffered.[2] See State Farm Mut. Auto. Ins. Co. v. Campbell, 538 U.S. 408, 422, 123 S. Ct. 1513, 1522 (2003) (evidence of tortious conduct justifying punitive damages "must have a nexus to the specific harm suffered by the plaintiff").

## IV

**IT IS ORDERED GRANTING IN PART** defendants' motion to exclude opinions of plaintiff's expert Michael Maloney (doc. 78). Dr. Maloney's testimony will be limited to his calculation of Wyeth's net worth, should evidence relating to punitive damages become necessary. His opinions regarding the size of an appropriate punitive damage award, that it is important to assess the "true value of a company" when awarding punitive damages, and how a punitive damages award can be calculated based on analogies to SEC fines, antitrust violations, and speeding fines are excluded. This ruling is without prejudice to defendants

---

[2] Other courts have excluded Dr. Hollon's testimony in hormone replacement therapy litigation against Wyeth for similar reasons. See Hines v. Wyeth, 2:04-0690, 2011 WL 2680834, at *4 (S.D.W. Va. July 8, 2011) (Dr. Hollon's testimony excluded as irrelevant when "nowhere in the record is there evidence suggesting that plaintiff or her prescribing physicians were influenced by defendants' promotional conduct"); In re Prempro Prods. Liab. Litig., 4:03CV1507-WRW, 4:04CV01169, 2007 WL 4189510, at *3 (E.D. Ark. Nov. 15, 2007) (Dr. Hollon's testimony excluded from liability stage of trial based on inability to tie opinions to "evidence that shows reliance on certain marketing materials").

1  making other appropriate objections to the offering of net worth evidence at trial.

2  **IT IS FURTHER ORDERED GRANTING** defendants' motion to exclude opinions
3  of plaintiff's expert Dr. Hollon (doc. 80).  However, this is without prejudice to the right of
4  plaintiff to offer such evidence if plaintiff first offers evidence that plaintiff or her physician
5  were likely to have been influenced by Wyeth's marketing efforts.

6  DATED this 5th day of April, 2012.

_____
Frederick J. Martone
United States District Judge

- 6 -